**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**
**AT KANSAS CITY**

| | | |
|---|---|---|
| CHAD FROBOS, | ) | |
| | ) | |
| On Behalf of Himself and | ) | |
| And All other Persons Similarly Situated | ) | |
| Plaintiffs, | ) | Civil Action No:  09-CV-2330 EFM/DWB |
| | ) | |
| vs. | ) | |
| | ) | |
| TRANSAM TRUCKING, INC, | ) | |
| | ) | |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS THE PETITION**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12**

COMES NOW TransAm Trucking, Inc. ("TransAm"), by and through its undersigned

counsel, and hereby submits the following to the Court:

## I.   INTRODUCTION

On June 18, 2009, the Plaintiff filed the Petition initiating this case.[1]  Upon agreement by

the Plaintiff in this action, the  Court issued an order extending the time for TransAm to file its

answer or otherwise respond to the Petition until September 11, 2009.  TransAm will be filing an

Answer contemporaneously with this Motion.

The Petition contains three counts.  Count I alleges a violation of the Fair Labor

Standards Act (FLSA), codified at 29 U.S.C. § 201 *et seq*.  Specifically, the Petition alleges that

---

[1]  The Plaintiff titled the pleading Petition for Damages – Class Action.  Although the Federal Rules of Civil
Procedure use the term Complaint, this pleading adopts the Plaintiff's use of the term Petition.  *See* FED. R. CIV. P.
3.

TransAm failed to "make compensation payments to its covered employees which are 'free and clear' of all encumbrances and not subject to further deduction." *See* Petition para. 37-39.

Count II alleges that TransAm violated the Kansas Wage Payment Act (KWPA), codified at K.S.A. § 44-314, by paying employees' wages via a payroll card. Specifically, it alleges that TransAm violated the law "by refusing to allow its Company Drivers to receive their compensation at no cost to the employee." *See* Petition para. 47.

Count III alleges a violation of the Kansas Minimum Wage and Maximum Hours Law (KMWMHL), codified at K.S.A. § 44-1201 *et seq*. Specifically, the Petition alleges that TransAm failed to "properly pay overtime compensation in the amount of one-and-one-half times the regular rate of pay for all hours worked in excess of forty-six hours in a workweek." *See* Petition para. 56.

As outlined below, the Petition fails to meet even the threshold requirements for stating a claim under the FLSA. Even if the Plaintiff were to prove the allegations in the Petition, he still would be unable to obtain relief under federal law. By including the FLSA allegation in the Petition, Plaintiff attempts to weave a state wage and hour claim into a federal cause of action. The Court should preclude the Plaintiff from using federal resources, and any benefits that may come with a federal cause of action, to pursue the central, underlying cause of action in this case, which is the alleged violation of the KMWMHL.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), TransAm moves the Court to dismiss Count I for failure to state a claim upon which relief may be granted. TransAm further requests the Court to dismiss Counts II and III, without prejudice, for lack of jurisdiction, thereby permitting the Plaintiff to seek relief by filing the claims properly in state court.

510464v1

2

## II.   FACTUAL ALLEGATIONS

TransAm Trucking, Inc. ("TransAm"), is a privately held corporation specializing in over-the-road freight delivery.  Although TransAm is organized pursuant to Missouri law, its headquarters is located in Olathe, Kansas.  Many of TransAm's employees are engaged in moving goods or materials in interstate commerce, and Transam has an annual gross volume of sales in excess of $500,000.

TransAm employees are eligible to receive their wages through different methods of payment.[2]  For purposes of this Motion, only one method of payment is relevant.  TransAm employees may have their wages placed onto a payroll card.  This payroll card, which is made available to TransAm employees by a third-party vendor, is referred to as a ComData Payroll Card.  Employees using the ComData Payroll Card to obtain cash are charged a nominal fee by the third-party vendor.[3]

## III.   APPLICABLE LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a Petition may be dismissed if it fails to "state a claim upon which relief can be granted."  Rule 12(b)(6) permits Courts to dismiss claims prior to discovery or other proceedings based on dispositive issues of law.  *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  Dismissal upon the pleadings protects against the expenditure of unnecessary resources, both by the Court and by the defendant, on unfounded allegations that federal law has been violated.  "[A] district court must retain the power to insist

---

[2]  The Petition fails to acknowledge the existence of this employee election.  Instead, it alleges that employees are able to receive wage payments solely through use of a payroll card.  Nevertheless, as this is a Motion to Dismiss, and not a Motion for Summary Judgment, the Court may assume for purposes of its ruling that all employees receive their wages via a ComData Payroll Card.

[3]  The Plaintiff fails to specify the fee for each withdrawal of cash.

upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 528, n.17 (1983).

In evaluating a dismissal motion, a court must accept all factual allegations contained in the Petition as true. "This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and factfinding." *Neitzke*, 490 U.S. at 326-27. However, this does not mean that the Plaintiff is excused from providing facts sufficient to establish a cause of action.

To establish a claim sufficient to withstand a dismissal motion, a complaint must contain "sufficient factual matter" to show that the allegations are facially plausible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A district court must conduct a two-part analysis of the Plaintiff's allegations:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Fowler v. UPMC Shadyside* No. 07-4285, 2009 WL 2501662 (3d Cir. Aug. 18, 2009) (citations omitted) (citing to and discussing the impact of *Ashcroft v. Iqbal*).

A Plaintiff must establish "the 'grounds' of his 'entitle[ment] to relief'" by using "more than labels and conclusions, and a formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint fails if it only presents "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* The Court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

IV.    ARGUMENT

Count I alleges that TransAm violated the FLSA by failing to "make compensation payments to its covered employees which are 'free and clear' of all encumbrances and not subject to further deduction." *See* Petition para. 37-39. In support of that conclusory statement, the Plaintiff provides the following factual information:

a. The Plaintiff was employed by TransAm as a company driver during the applicable time period.

b. The Defendant was an enterprise engaged in interstate commerce during the applicable time period.

c. The Defendant provided wage payments to the Plaintiff via a payroll card.

d. TransAm employees using the payroll card, also called a ComData card, incur a transaction fee for each cash withdrawal.

To evaluate this sufficiency of the Petition, the Court must accept these factual assertions in the Petition as true.

A. BY FAILING TO ALLEGE THAT THE PLAINTIFF RECEIVED WAGES IN AN AMOUNT LESS THAN MINIMUM WAGE, THE PETITION FAILS TO STATE A CLAIM THAT ENTITLES PLAINTIFF TO RELIEF UNDER THE FAIR LABOR STANDARDS ACT.

The FLSA establishes the minimum wage that must be paid by employers whose business is an "enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). For FLSA enterprise coverage to apply to a particular employer, the employer must have: (a) employees engaged in commerce or are handling goods or materials that have been moved in or produced for commerce; and (b) annual sales volume of not less than $500,000. 29 U.S.C. § 203(s)(1)(A). If an employer is an "enterprise engaged in commerce,"

FLSA wage requirements apply throughout the company; there is no need to make an individual assessment of each employee's involvement in interstate commerce. *See Maryland v. Wirtz*, 392 U.S. 183, 186 (1968) (stating that the FLSA "covers all employees of any 'enterprise' engaged in commerce or production for commerce, provided the enterprise also falls within certain listed categories").

There is no dispute that TransAm meets the criteria for an enterprise engaged in commerce. The parties agree that TransAm employees are engaged in interstate commerce, and that the company's annual sales volume exceeds $500,000. Moreover, pursuant to the statutory definition, TransAm employees clearly qualify as employees under the FLSA. *See* 29 U.S.C. § 203(e)(1) (an employee is "any individual employed by an employer"). Therefore, TransAm is mandated to comply with the FLSA's minimum wage requirements. *See* 29 U.S.C. § 206 (explaining the minimum wage). The minimum wage during the years covered by the Petition was up to $6.55 an hour for each hour worked.[4]

Although the Petition alleges that TransAm violated § 206, **the Petition does not allege that the Defendant failed to pay the Plaintiff and putative class members the requisite minimum wage.** Instead, TransAm is alleged to have violated § 206 by providing wages via a payroll card that charges a nominal fee for cash withdrawals. According to the Plaintiff, the mere fact that the card charges a nominal fee is, in and of itself, a violation of § 206.

The Plaintiff couches his argument as a violation of a FLSA implementing regulation, 29 C.F.R. § 531.35. In the Petition, he refers to § 531.35 as the "free and clear" requirement of the FLSA. By focusing on the term "free and clear," as used in the regulation, the Plaintiff asserts

---

[4] Pursuant to § 206, the wage increased to $5.85 per hour on July 24, 2007 and to $6.55 per hour on July 24, 2008. The increase to $7.25 per hour on July 24, 2009 occurred after this case commenced.

that FLSA-covered employers are required to pay all wages without further encumbrances, including cash withdrawal fees.

The complete text of the regulation is as follows:

Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear."   The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee.  This is true whether the "kick-back" is made in cash or in other than cash.  For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, **there would be a violation of the act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act**.

29 C.F.R. § 531.35 (emphasis added).

As is clear from the text of § 531.35, the regulation is explicitly intended to prohibit employers from paying below the requisite minimum wage by shifting costs of business, such as employee uniforms or other "tools of the trade," to employees.  It does not prohibit employers from making deductions or charging fees if the employees' wages are above the requisite minimum.

The case law on this point is clear.  "An employer may not deduct from employee wages the cost of facilities which primarily benefit the employer if such deductions drive wages below the minimum wage."  *Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1236 (11th Cir. 2002).  *See also Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972) (stating that an employer could not "shift part of the employer's business expense to the employees . . . to the extent that it reduced an employee's wage below the statutory minimum").  This interpretation of § 531.35 is routinely recognized in federal district courts in a wide variety of contexts across the country.  For example, the Eastern District of California recently held that

510464v1                                                                                                                 7

employees could be responsible for the cost of clean uniforms so long as the cost did not force the wage below the FLSA minimum. *See California Dairies, Inc. v. RSUI Indem. Co.*, 617 F. Supp. 2d 1023, 1045 (E.D. Cal. 2009) ("The FLSA only requires an employer to reimburse the employee for furnishing or maintaining clean uniforms if failure to do so would reduce their wages below the minimum wage."). *See also Garcia v. Frog Island Seafood, Inc.* No. 2:06-CV-46-F, 2009 WL 1913233, at *4 (E.D.N.C. June 29, 2009) ("An employer may not deduct from employee wages [costs] . . . if such deductions drive wages below the minimum wage."); *Riviera v. The Brickman Group Ltd.* Civ. No. 05-1518, 2008 WL 81570, at *7 (E.D. Pa. Jan. 7, 2008) ("If an employer does pass along such an expense, then the expense is deducted from the cash wage to determine compliance with the FLSA minimum.").

Moreover, even the United States Department of Labor (DOL) concedes that § 531.35 does not pertain to situations in which an employee is paid above the minimum wage. The DOL's Wage and Hour Division has independent authority to investigate FLSA wage and hour violations. That Division also has statutory authority to provide binding written opinion letters interpreting the FLSA and its regulations. *See* 29 U.S.C. § 259(a) (providing that "no employer shall be subject to any liability or punishment . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the [Wage and Hour Division of the Department of Labor]").

The Wage and Hour Division repeatedly has acknowledged that § 531.35, the "free and clear" regulation, is not applicable if the FLSA minimum wage requirements are met. For example, Opinion Letter FLSA2005-18, issued on May 31, 2005, states:[5]

---

[5] This Opinion Letter is available at
http://www.dol.gov/esa/WHD/opinion/FLSA/2005/2005_05_31_18_FLSA_Reimbursement.pdf.

> Wages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the FLSA will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee, **if such payments bring the employee's pay below the required minimum wage or overtime levels**. See Section 531.35 of the enclosed 29 CFR Part 531.

(emphasis added).    Moreover, Opinion Letter FLSA2008-4, dated May 15, 2008, states: "It is our longstanding position that the cost to employees of uniforms **may not result in wages falling below the legally required minimum.** *See, e.g.*, Wage and Hour Opinion Letter FLSA2001-7 (Feb. 16, 2001); Field Operations Handbook (FOH) § 30c12(e)(1)." (emphasis added). [6]

While the Plaintiff in this case argues that each ComData transaction fee, in and of itself, violates the FLSA, there simply is no basis in the law for such an argument. The FLSA § 206 wage requirement is a floor for covered employers; employers such as TransAm are not obligated to pay employees any more than the minimum wage specified in the FLSA. So long as the employees receive the minimum wage, the employer does not violate § 206, regardless of fees that are charged for uniforms or other tools of the trade.[7] Therefore, the analysis of the issue in this Motion to Dismiss is quite simple: unless the fee reduces the employee's wage below the FLSA's minimum wage, there is no FLSA violation.[8]

---

[6] This Advisory Opinion is available at
http://www.dol.gov/esa/WHD/opinion/FLSA/2008/2008_05_15_04_FLSA.pdf.

[7] Notably, the Plaintiff also fails to differentiate the circumstances under which fees are charged for using the ComData card; instead, he alleges a violation every time the card is used. However, accepting the Plaintiff's argument as true, only the first charge each pay period could conceivably be a violation of the FLSA regulation. There is no allegation that the employee is prohibited from withdrawing his or her entire wage payment in the first transaction during a pay period. This means that subsequent withdrawals during a pay period are at the discretion and control of each employee. Therefore, the Plaintiff's description of the ComData card fees includes allegations that could not be an FSLA violation even if the Petition stated a valid claim.

[8]    There is a secondary issue present in this case. Assuming that the ComData card fees caused employees to receive less than the minimum wage, the Plaintiff still would need to prove that the fees were for the employer's

In this case, the Plaintiff fails to allege that he and the other putative class action members received wages below the requisite minimum wage. Count I of the Petition does not even address the wage paid to the Plaintiff. Without such information, the Court has no basis on which it can determine that the Plaintiff has established a "plausible claim for relief." *Iqbal*, 129 S. Ct. at 1949. Accordingly, Count I should be dismissed.

### B.  EVEN IF THE COURT CHOOSES TO DECLINE TO DISMISS COUNT I, THE COURT SHOULD NEVERTHELESS DECLINE TO EXERCISE JURISDICTION OVER COUNTS II AND III.

The Petition alleges that the Court has both supplemental and original jurisdiction to maintain this case. For the reasons set forth below, the Court should decline jurisdiction on both grounds and dismiss Counts II and III without prejudice.

#### 1.  Supplemental Jurisdiction

The Court has original jurisdiction over the FLSA claim asserted in Count I. *See* 28 U.S.C. § 1331 (providing that district courts have original jurisdiction over civil actions arising under the laws of the United States). The Plaintiff asserts that, as a result, the Court has supplemental jurisdiction over the alleged state law violations contained in Counts II and III pursuant to 28 U.S.C. § 1367. Section 1367 provides, *inter alia*, that district courts have supplemental jurisdiction over claims brought in connection with a claim over which the court has original jurisdiction. *See* 28 U.S.C. § 1367(a).

If the Court dismisses Count I for failure to state a claim, the Court may decline to exercise supplemental jurisdiction over Counts II and III. *See* 28 U.S.C. § 1367(c)(3) (identifying the reasons by which a court may decline supplemental jurisdiction); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) (stating that a court's

---

benefit. *See Arriaga,* 305 F.3d at 1236. At this point, however, the Court does not need to consider this issue to determine that the Plaintiff fails to state a claim.

decision to exercise jurisdiction over state claims is "a doctrine of discretion, not of plaintiff's right"). Even if Count I is not dismissed, however, the Court has ample reasons to decline to accept jurisdiction over the state law claims.

### a. The Case Raises a Complex Issue of State Law.

The Court has authority to decline supplemental jurisdiction if a claim raises a complex issue of state law. *See* 28 U.S.C. § 1367(c)(1); *see also Klein & Co. Futures, Inc. v. Board of Trade*, 464 F.3d 255, 259 (2d Cir. 2006) (a court's decision to decline supplemental jurisdiction over state law claims is reviewed solely for abuse of discretion).

In this case, Count III, which alleges a violation of the KMWMHL, raises a complex issue of Kansas state law. The issue to be resolved in connection with Count III is whether an FLSA-covered employer, such as TransAm, is required to comply with the KMWMHL. Recent case law has complicated the answer to this question. By filing an insufficient FLSA claim alongside the KMWMHL claim, the Plaintiff is attempting to circumvent the Kansas Supreme Court's ability to clarify the relationship between the two statutes.

The seminal case discussing this issue is *Dollison v. Osborne County*, 737 P.2d 43 (Kan. 1987). In *Dollison*, the Supreme Court of Kansas determined KMWMHL "does not apply to 'employers' who are obligated to meet the standards of the FLSA." *Id.* at 49. The Court further stated that "[i]f an employment relationship is excluded from the FLSA, it would *not* be excluded from the KMWMHL." *Id.* Each of these statements is a clear indication that FLSA-covered employers are not subject to the requirements of the KMWMHL.

Nevertheless, the relationship between the FLSA and the KMWMHL continues to generate confusion. This Court has recognized the complexity of this issue in its opinion in *Clements v. Emery Worldwide Airlines, Inc.*, 44 F. Supp. 2d 1141 (D. Kan. 1999). The *Clements*

case involved a Plaintiff who claimed that an air freight carrier, doing business in Kansas, violated the KMWMHL by failing to comply with its overtime provisions. *Id.* at 1143. The parties did not dispute that the Plaintiff was engaged in interstate commerce as an employee of the air freight carrier, and therefore was an employee covered by the FLSA. *Id.* The issue presented to the Court, however, was whether the Plaintiff was entitled to receive overtime compensation under the KMWMHL. *Id.*

In its opinion, the Court discussed the interplay between the FLSA overtime wage exception for motor carriers and the KMWMHL. Initially, the Court recognized that the plain language of the statutes should preclude an air freight common carrier from having to comply with the KMWMHL maximum hour provision. *Id.* at 1147 ("From the plain language of the statute, it appears that [the air freight carrier] is not covered by the KMWMHL.").

The Court, however, was unable to end its discussion with that analysis. Instead, it was indicated that the issue was made more complex by the Kansas Supreme Court's ruling in *Dollison.* Specifically, the Court addressed *Dollison* by stating, "[h]owever, the Kansas Supreme Court has interpreted this statute in a way that makes it applicable to this case." *Id*. The Court then determined that it was bound to defer to the Kansas Supreme Court's interpretation of its own statute. As a result, the *Clements* court ultimately required the air freight carrier to comply with the maximum hour provisions of the KMWMHL. *Id.* at 1148.

The *Clements* decision has resulted in additional confusion in the State of Kansas concerning which employers are covered by the KMWMHL. For example, a case presently before the Kansas Court of Appeals, *Brown v. Ford Storage & Moving Co.*, No. 101915 (Kan. Ct. App. filed Feb. 18, 2009) presents the same *Dollison* issue presented in this case. By initiating this lawsuit in federal district court, the Plaintiff ensures that the Kansas Supreme

Court will be prevented from clarifying a legal issue of substantial importance to employers operating within Kansas.

### b. FLSA Collective Actions Are Not Consistent with State Law and Should Not Be Maintained in Lawsuits involving State Wage and Hour Violations.

The Court also may decline to exercise supplemental jurisdiction over state law allegations if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). In this case, there are other compelling reasons for the Court to decline to exercise jurisdiction over Counts II and III.

The Petition pleads Counts II and III as class action claims, which are governed by Federal Rule of Civil Procedure 23. Rule 23 provides for a plaintiff to act as a "representative" party on behalf of all class members. *See* Fed. R. Civ. P. 23(a). In Rule 23 actions, class members' interests are assumed to be represented by the Plaintiff unless the member chooses to be excluded from the class. *See* Fed. R. Civ. P. 23(c)(2)(B).

Count I, on the other hand, is not a Rule 23 class action. It is an FLSA "collective action" that requires each person to formally "opt-in" to the litigation before becoming entitled to relief. *See* 29 U.S.C. 216(b). Congress decided to impose this requirement in FLSA actions to curb the "excessive litigation spawned by plaintiffs lacking a personal interest in the outcome." *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989) (further stating that the FLSA opt-in procedure was enacted "for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions").

As a result, Count I will require the parties and the Court to provide significantly different notice and guidance to potential collective action members than it gives to potential

class action members under Counts II and III.  These differences likely will result in a disparity between the individuals who "opt in" under Count I and who are considered class members under Counts II and III.  As the Third Circuit noted regarding cases involving state class action and federal collective action claims:

> [T]he disparity in numbers of similarly situated plaintiffs may be so great that it becomes dispositive by transforming the action to a substantial degree, by causing the federal tail represented by a comparatively small number of plaintiffs to wag what is in substance a state dog.

*De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003) (further stating that "mandating an opt-in class or an opt-out class is a crucial policy decision").

Other courts have recognized "that opt-in FLSA collective actions are 'inherently incompatible' with opt-out Rule 23 state-law class actions." *Warner v. Orleans Home Builders, Inc.*, 550 F. Supp. 2d 583, 588 (E.D. Pa. 2008); *see also McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill. 2004).  *But see Salazar v. Agriprocessors, Inc.*, 527 F. Supp. 2d 873, 880 (N.D. Iowa 2007) (stating that the FLSA did not expressly prohibit federal district courts from exercising jurisdiction over state class action claims).

Including a state law action with an FLSA claim "essentially nullif[ies] Congress's intent in crafting Section 216(b) and eviscerate[s] the purpose of Section 216(b)'s opt-in requirement." *Warner*, 550 F. Supp. 2d at 588. (quoting *Otto v. Pocono Health System*, 457 F. Supp. 2d 522, 524 (M.D. Pa. 2006)).  For this reason, the Court should now dismiss Counts II and III of Plaintiff's Petition in order to preclude the Plaintiff from circumventing Congress's intent in creating the FLSA's collective action requirements.

## 2.  Original Jurisdiction

The Plaintiff also requests that the Court exercise original jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332.  Section 1332 provides two means for accepting original

jurisdiction over Counts II and III.  First, the Court could exercise diversity jurisdiction if the amount in controversy exceeds $75,000 and the controversy involves citizens of different states. *See* 28 U.S.C. § 1332(a).  Second, the Court could exercise jurisdiction over a class action claim in which the matter in controversy exceeds $5,000,000 and any member of the class is a citizen of a state different from the Defendant.  *See* 28 U.S.C. § 1332(d)(2).

The Petition is wholly devoid of any information upon which the Court can determine the amount in controversy.  Therefore, the Court has no basis for accepting original jurisdiction either through diversity or otherwise.  Although the Petition alleges that the amount in controversy exceeds $75,000 in one place and $5,000,000 in another, the Court must base its decision based on more than simply speculation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true.") (citations omitted).  The Plaintiff fails to provide information that would allow the Court to do so.  Accordingly, the Court has no basis on which it may exercise original jurisdiction.

## V.   CONCLUSION

For the foregoing reasons, the Court should dismiss Count I of the Petition for Failure to State a Claim.  The Court also should decline to exercise jurisdiction over Counts II and III.  In doing so, the Petition should be dismissed without prejudice in its entirety.  This would permit the Plaintiff to refile in the State of Kansas, and allow the state courts to properly interpret state law.

Respectfully submitted,


SEIGFREID, BINGHAM, LEVY,
 SELZER & GEE, P.C.

By /s/ Rachel H. Baker
    Rachel H. Baker, US-KS #70148
    Julia G. Gaughan, KS #23919
    2800 Commerce Tower
    911 Main Street
    Kansas City, Missouri  64105
    rbaker@sblsg.com
    jgaughan@sblsg.com
    816-421-4460
    Fax:  816-474-3447

ATTORNEYS FOR DEFENDANT
TRANSAM TRUCKING, INC.


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 11th day of September, 2009, the foregoing
was served on all parties of interest receiving electronic notices in the above-captioned
proceedings through the Court's CM/ECF System, including:.

Michael F. Brady
mbrady@mbradylaw.com

Matthew E. Osman
mosman@mbradylaw.com

/s/ Rachel H. Baker
Attorney for TransAm Trucking, Inc.